[SUNBURY, JULY 3, 1829.]

## NOURSE and Wife *against* M'CAY and another.

### IN ERROR.

Where the question was whether a deed, an exemplification of which had
been read in evidence, the original not being produced, was a forgery or not,
*held*, that a book of accounts belonging to, and in the handwriting of the ma-
gistrate before whom the deed purported to have been acknowledged, and
whose name appeared as a subscribing witness, containing charges against
the grantor for the acknowledgment of three deeds only, which had certain-
ly been acknowledged before him, on the same day as that on which the
deed in question purported to have been acknowledged, was competent evi-
dence, the magistrate being dead, to show that that deed had not been ac-
knowledged before him.

WRIT of error to the Court of Common Pleas of *Northumber-
land* county, in an ejectment for ten lots in the town of *Northum-
berland*. The plaintiffs in error, *Joseph Nourse* and *Caroline* his
wife, were the plaintiffs below, and *William M'Cay* and *William
A. Lloyd*, defendants. It is apprehended that the statement of
the case is sufficiently given in the opinion of the court.

The cause was argued by *Greenough* and *S. Hepburn*, for the
plaintiffs in error, who cited *Crouse and another* v. *Miller*, 10
*Serg. & Rawle*, 155.

J. *Hepburn* and *Bellas*, in their arguments for the defendants
in error, cited *Salmon* v. *Rance*, 3 *Serg. & Rawle*, 314. *Vincent*
v. *Lessee of Huff*, 4 *Serg. & Rawle*, 300. *Church Dig*. 406.
*Rogers* v. *Old*, 5 *Serg. & Rawle*, 408. *Smith* v. *Lane*, 12 *Serg.
& Rawle*, 80. *Deal* v. *M'Cormick*, 3 *Serg. & Rawle*, 345.

The opinion of the court was delivered by

TOD, J.—On the trial a complete title in fee simple was shown
in *Caroline*, one of the plaintiffs, by inheritance from her mother,

(Nourse and Wife *v.* M'Cay and another.)

*Sarah H.,* who had intermarried with the defendant *William A. Lloyd.* To rebut this, and to show that Mrs. *Lloyd,* the mother of the plaintiff *Caroline,* and wife of the defendant *Lloyd,* had in her life time parted with her interest, the defendants produced from the recorder's office of the county, and read in evidence an exemplification of a deed from *William A. Lloyd* and *Sarah H. Lloyd* his wife, to *Alexander Elliot,* in fee simple for eighteen lots, including the property in dispute, and for an out lot of twenty-four acres. The subscribing witnesses to this deed were *Heath Norbury* and *John H. Cowden.* It was dated the 27th *September,* 1820, and acknowledged on the same day by both the grantors before the said *Norbury* as justice of the peace. Also an exemplification of an agreement under the hands and seals of the said *William A. Lloyd* and *Sarah H. Lloyd,* apparently written on the same paper, and referring to the aforesaid deed of the 27th of *September,* 1820, containing a valuation of the twenty-four acres and of the other lots, stating that they were intended for *William A. Lloyd,* and that as an equivalent he was to build a stone kitchen adjoining the house where Mrs. *Lloyd* and himself then resided, for the benefit of her and her heirs, and to be worth at least one thousand dollars. The subscribing witnesses to this agreement were *Henry Rude* and *Heath Norbury.* It was dated on the same day with the deed; namely, the 27th of *September,* 1820, and was acknowledged separately from the deed, on the same day, before the same Justice *Norbury.* The defendants also showed the exemplification of a deed, also endorsed, from *Elliot* and wife to *William A. Lloyd,* for the land and lots conveyed to *Elliot* as aforesaid. To this title set up by the defendants, the answer of the plaintiffs was, that as to the property in question it was a mere forgery; and whether forgery or not, was the only question in the cause. The plaintiffs' counsel alleged the matter to be thus: that Mrs. *Lloyd,* the mother of Mrs. *Nourse* and wife of the defendant, wishing to convey one of her town lots to *Alexander Elliot,* a poor man who had rendered her and her family some services, she had the deed drawn by Mr. *Chapman,* the scrivener; and she, with her husband, executed it in the presence of the two witnesses; and it being a printed form of deed, with wide blank spaces, seventeen other town lots, by short references to number and description, and the twenty-four acres near the town, were afterwards inserted by *William A. Lloyd,* or by his procurement; and that he, in order to prevent an immediate detection of the fraud, when he had got the deed recorded, with the endorsements which also, as they say, were in part fabricated, had destroyed the originals or secreted them. On this head, and to account for the loss, *Lloyd* himself proposed to be, and was sworn, and testified as follows:—

" Some time after the trust deed (the deed to *Elliot*) was executed, I took it to the recorder's office. I do not recollect how

(Nourse and Wife *v.* M'Cay and another.)

many years elapsed, before I began to make inquiry for this deed.
I made diligent search about the house; also among General *Muh-*
*lenburg's* papers.    I inquired at the recorder's office, and was told
that the title papers were carried away.    Can't recollect of whom
I made the inquiry.    It was several years after the deed was re-
corded.    I inquired of Mr. *Lazarus.*    I got *Martin Weaver* to
search the office. , If I received the deed at the recorder's office I
don't know what has become of it; whether it was sent to *Balti-*
*more* with other deeds or destroyed by the vermin.    I have searched
since, within two years, and last week.    I have caused no search
to be made in the recorder's office since this trial.    Cross-examined.
I began to search after I heard of the plaintiffs' intention to bring
this ejectment.''

To support this charge of forgery, and to controvert it, a very
great deal of evidence was offered by the plaintiffs and by the de-
fendants, on the weight of which we shall neither give nor form an
opinion.    Among the rest, a piece of evidence was offered by the
plaintiffs, objected to by the defendants, and overruled by the court.
It was a book of accounts, proved to have been Justice *Norbury's,*
who is now deceased, and in his handwriting.    In it he appears to
have entered at one time, three charges of twenty-five cents each,
against *William A. Lloyd,* for taking three acknowledgments of
deeds from Mr. and Mrs. *Lloyd,* one to *Charles Maus,* another
to *W. Fisher,* and another to *Alexander Elliot.*    The deed to
*Maus,* and that to *Fisher* were produced on the trial, and they
both appear to have been executed on the same 27th of *September,*
1820, and to have the same subscribing witnesses; namely, *Heath,*
*Norbury,* and *John H. Cowden.*    The plaintiffs' counsel allege
that it was material to show this account and book of *Norbury,* a
subscribing witness.    They say the deed derives authenticity from
*Norbury's* signature; and that the deed to *Elliot,* as now pro-
duced, with another deed upon the back of it, and both apparently
acknowledged on the same day, before the same justice, if they
had both existed so at the time, and had not been altered and fabri-
cated since, they would *both* have been charged in the same book,
and that entering but three acknowledgments against *William A.*
*Lloyd,* on that day, forms a strong ground to presume that only
three acknowledgments were taken on that day which could be
chargeable to him.    They say, too, that forgery of deeds for land
must often go undetected, unless by circumstances; because the
law necessarily gives the advantage of destroying the original, ac-
tual forgery, and of relying upon a copy from the recorder's office:
a privilege which other forgeries cannot have, because the law in-
sists upon the production of the writing itself, and will not tolerate
a copy, unless upon the strictest proof of the loss of the original.
They contend further, that *Norbury,* the subscribing witness to the
deed, and to the agreement endorsed, though dead, yet his hand-

(Nourse and Wife *v.* M'Cay and Lloyd.)

writing supports the instrument; therefore his declarations, oral or written, are admissible in evidence, so far only as to controvert any deduction which may be drawn from his signature.

We are all of opinion that these reasons, of the plaintiffs' counsel are valid; and that it was error to reject the entry in the book of Justice *Norbury.* I may add, though the evidence of the book was competent, it by no means follows that it was either conclusive or weighty. By itself it would appear very slight.

Judgment reversed, and a *venire facias de novo* awarded.